Opinion issued June 6, 2002






 







In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00181-CV






RHONDA RENE ROBINS, INDIVIDUALLY AND AS NEXT FRIEND OF
JACKIE WAYNE ROBINS, JR., A MINOR, AND JACKIE WAYNE
ROBINS, SR., Appellants


V.


THE KROGER COMPANY, Appellee






On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 91-41983-D






O P I N I O N 


 Appellants, Rhonda Rene Robins, individually and as next friend of Jackie
Wayne Robins, Jr., a minor, and Jackie Wayne Robins, Sr. (collectively referred to
as "Robins"), appeal a take-nothing summary judgment rendered in favor of appellee,
The Kroger Company. We reverse and remand.

Facts and Procedural History

 On August 11, 1989, Jackie Wayne Robins, Jr., then three years old, set fire to
a pile of clothes in a van parked outside his home with a disposable cigarette lighter
allegedly placed in the stream of commerce by Kroger. Jackie Jr. suffered severe and
lasting injuries.

 Among others, Robins sued Kroger for (1) breach of express and implied
warranties, (2) negligent design, manufacture, and marketing of the lighter, (3)
negligence per se for failing to comply with consumer product safety standards, and
(4) strict products liability alleging defects in the manufacturing, marketing, and
design of the lighter. The primary basis for Robins' claims was the lighter did not
include a child-proof or child-resistant design or mechanism to eliminate or reduce
the risk that a child, such as Jackie Jr., could ignite the lighter.

 In 1996, the trial court granted Kroger's first motion for summary judgment on
the basis that in 1989 the manufacturers, distributors, and/or retailers of lighters had
no duty to make child-resistant lighters because lighters were in a certain class of
products intended for adult use and not otherwise defective. We affirmed in part, but
reversed and remanded to the trial court, holding a duty existed and a fact issue
remained under the risk-utility analysis on Robins' design-defect claim. Robins v.
Kroger Co., 982 S.W.2d 156, 164 (Tex. App.--Houston [1st Dist.]), denied, 5 S.W.3d
221 (Tex. 1999). The Texas Supreme Court denied Kroger's petition for
discretionary review, but, in its per curiam opinion, it noted that whether a fact issue
remained under the risk-utility analysis could not be determined on the record,
because Kroger's motion for summary judgment did not apply the risk-utility analysis
to Robins' design-defect claims. Kroger Co. v. Robins, 5 S.W.3d 221, 221 (Tex.
1999).

 Upon remand, Kroger moved for summary judgment under the risk-utility
analysis on Robins' design-defect claim. Specifically, Kroger argued it was entitled
to judgment as a matter of law if any one of the following applies: (1) a product safely
designed for its intended use could not be unreasonably dangerous, (2) a disposable
cigarette lighter could not be unreasonably dangerous by design if the risks of its use
by a minor child were known and obvious to its intended adult users, or (3) a
disposable cigarette lighter could not be unreasonably dangerous by design if it met
the expectations of the ordinary adult intended consumer.


Discussion (1)

 We review the appeal under the usual standards of review applicable to
motions for summary judgment. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195,
197 (Tex. 1995) (all evidence favorable to nonmovant taken as true and reasonable
inferences indulged in nonmovant's favor); Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548 (Tex. 1985) (defendant-movant bears burden to show no
genuine issue of material fact and entitlement to judgment as matter of law).

I.

 Since the first Robins v. Kroger appeal, the Texas Supreme Court answered a
certified question for the United States Court of Appeals for the Fifth Circuit on
point. The question presented was "whether a disposable butane lighter, intended
only for adult use, can be found to be defectively designed if it does not have a child-resistant mechanism that would have prevented or substantially reduced the risk of
injury from a child's foreseeable misuse of the lighter." Hernandez v. Tokai Corp.,
2 S.W.3d 251, 254 (Tex. 1999). In the appeal before us, both parties argue
Hernandez requires disposition in its favor.

 The facts of the case in the Fifth Circuit involved a disposable butane lighter
purchased by Rita Emeterio for use at her bar. Id. at 255. Even though childproof
lighters were available for purchase, Emeterio purchased a lighter without a
childproof mechanism. Id. Gloria Hernandez, Emeterio's adult daughter, took the
lighter from the bar for her personal use. Id. Hernandez's five-year-old daughter
took the lighter from her mother's purse on the top shelf of a bedroom closet and
started a fire in the room, severely burning her two-year-old brother. Id. 

 Kroger suggests the facts in Hernandez are identical to those in this case;
however, the cases differ in one important aspect. In Hernandez, a childproof lighter
was available for purchase, and Emeterio chose not to buy it. Id. In the case before
us, manufacturers of disposable lighters had not yet produced a childproof lighter,
even though it was technologically possible.

 To answer the certified question, the Hernandez court began by reaffirming
Texas's use of the risk-utility analysis to determine whether a defectively designed
product is unreasonably dangerous. Id. at 256. The risk-utility analysis involves
consideration of several factors including the following:

 (1) the utility of the product to the user and to the public as a whole
weighed against the gravity and the likelihood of injury from its
use,

 

 (2) the availability of a substitute product which would meet the same
need and not be unsafe or unreasonably expensive, 


 (3) the manufacturer's ability to eliminate the unsafe character of the
product without seriously impairing its usefulness or significantly
increasing its costs, 


 (4) the user's anticipated awareness of the dangers inherent in the
product and their avoidability because of the general public
knowledge of the obvious condition of the product, or of the
existence of suitable warnings or instructions, and 


 (5) the expectations of the ordinary consumer. 


Id. (citing Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 432 (Tex. 1997)). 

 In its motion for summary judgment, Kroger concedes a question of material
fact exists under factors two and three of the analysis. Kroger's arguments focus
specifically on factors four and five. Kroger urges us to hold it is entitled to judgment
as a matter of law on the strength of either factor four or five standing alone. In
Hernandez, the Texas Supreme Court addressed arguments similar to all of Kroger's
assertions as to when factors four and five may be decided as a matter of law. 
Hernandez, 2 S.W.3d at 257. 

 First, Hernandez addressed the situation where the risk of injury from a child's
misuse of a product is obvious to the product's intended adult users. Id. at 258. The
court stated that the fact that adult users may be aware of an obvious danger is "an
important consideration in determining whether the product is unreasonably
dangerous" and may be decisive in the risk-utility analysis, but "in and of itself is not
an absolute bar . . . to liability for a defective design." Id. Here, Kroger made the
child misuse argument in its motion for summary judgment. This basis for summary
judgment, standing alone, cannot be an absolute bar to recovery, but should be
considered in the entirety of the risk-utility analysis. See id.

 Second, Hernandez addressed the fact that the product was intended to be used
only by adults. Id. at 258-59. The court stated manufacturers and sellers of products
intended for adult use do not have to make the products "childproof merely because
it is possible for children to cause harm . . . and certain that some children will do so." 
Id. at 259. However, the court continued by stating the "risk that adults, for whose
use the products were intended, will allow children to access them, resulting in harm,
must be balanced against the products' utility to their intended users." Id. The court
then directed the Fifth Circuit to apply the general principle for assessing a product's
safety in the context of its intended use under the risk-utility analysis as in Caterpillar
Co. v. Shears, 911 S.W.2d 379, 384 (Tex. 1995). Hernandez, 2 S.W.3d at 259. Thus,
Kroger's first basis for summary judgment here should not be considered, standing
alone, but in the entirety of the risk-utility analysis. See id.

 Last, Hernandez addressed measuring the utility of disposable lighters with
reference to their intended adult users. Id. at 260. If the cigarette lighter's design
meets consumer expectations, then this fact may be ultimately determinative. Id. at
261. However, the Texas Supreme Court stated it is only "ultimately determinative"
as a matter of law if "reasonable minds cannot differ on the risk-utility analysis
considerations." Id. Thus, this basis for summary judgment should not be
considered, standing alone, but in the entirety of the risk-utility analysis. See id.

II.

 Having reviewed the Texas Supreme Court's decision in Hernandez and the
relevant portions relied upon by Kroger in its motion for summary judgment, we
analyze all five factors of the risk-utility test regarding Kroger's motion for summary
judgment.

 In their response to Kroger's motion for summary judgment, Robins relies, in
part, on information contained in the Federal Register. From 1980 through 1985, an
estimated 750 persons were injured and 120 people died each year in residential fires
started by children playing with lighters. Consumer Product Safety Commission, 53
Fed. Reg. 6833 (1988) (proposed March 3, 1988). Estimated costs of these fires was
between 300 and 375 million dollars. Id. In 1988 through 1990, the number of
injuries caused annually by children playing with lighters increased to 1,100, and the
number of deaths rose to 150. Safety Standards for Cigarette Lighters, 58 Fed. Reg.
37557, 37564 (1993) (to be codified at 16 C.F.R. pt. 1210). Children three to four
years old caused most of the fires. Consumer Product Safety Commission, 53 Fed.
Reg. 6833, 6834 (1988) (proposed March 3, 1988). Prior to 1989, a child under the
age of five was burned to death every day by a fire started with a disposable lighter. 
Id.

 An estimated 80 to 105 deaths per year would be avoided by the
implementation of childproof lighters. Safety Standards for Cigarette Lighters, 58
Fed. Reg. 37557, 37564 (1993) (to be codified at 16 C.F.R. pt. 1210). Approximately
205-270 million dollars in potential damages would be saved by manufacturing
childproof lighters. Id. Estimates of manufacturing costs for initially producing
childproof lighters approached 50 million dollars. Id. at 37565. In 1993,
manufacturers were expected to see a one to five percent increase in production costs
and a one to five cent increase in per-unit cost. Id. 

 The summary judgment evidence before the trial court also contained the
expert report and affidavit of Dr. John O. Geremia, a mechanical engineer and an
expert in fires associated with disposable lighters. Geremia examined the lighter in
the case and reported it was "defective in design in that it had no child resistant
feature whatsoever on the lighter." Geremia testified, by affidavit, it was
technologically possible to produce childproof lighters in 1989. Geremia further
stated manufacturers were aware child-resistant features were not implemented
because of manufacturer resistance. In fact, child-resistant lighters were not marketed
until 1992. In 1993, the United States Consumer Products Safety Commission
(CPSC) ordered manufacturers to include child-resistant features in disposable
lighters. 58 Fed. Reg. 37554, 37556. The CPSC determined that the gravity of the
harm and the social value of including a child-resistant feature in the lighter should
require manufacturers to include a child-resistant feature. Id.

 Kroger argues Jackie Jr.'s parents were aware of the danger to unsupervised
children playing with disposable lighters. Without any warnings or labels, Jackie
Jr.'s parents knew the lighter could be dangerous. Jackie Jr.'s parents were also
aware of the risk that Jackie Jr. might get the lighter, and they took precautions to
keep him from getting it. As Hernandez acknowledged, parents are in a better
position to guard against a child's use of the lighter than a manufacturer or seller. 
Hernandez, 2 S.W.3d at 262.

 While the product was intended to be used only by adults, Kroger is not
insulated from liability merely because a child gained access. See id. at 260. We
consider this factor when we apply liability standards in the context of the intended
users. Id. As directed by Hernandez, we apply the general principle that a product's
safety must be assessed in the context of its intended use. Id. at 259. Lighters are
intended to be used only by adults, but they can be made childproof. Making a lighter
childproof does not prevent the lighter from being used by its intended users, adults. 
See, e.g., Caterpillar Co., 911 S.W.2d at 384 (not required to design loader so that,
to be safe in all situations, it becomes of no use at all in others). Kroger presents no
arguments as to why an alternative childproof lighter would not effectively meet the
needs of adult users and at the same time protect against the risk that a lighter might
come into a child's hands. Kroger also presents no evidence concerning the utility
of a lighter without a childproof mechanism.

 Lastly, consumer preference impacts the analysis. Id. at 260. In Hernandez,
the court considered the possibility that all non-childproof lighters should be
eliminated in favor of producing only childproof lighters because both kinds of
lighters were available in the market. Id. The court noted that, to make a product safe
for the least likely and unintended user would hold all other users hostage. Id. 
Instead, the court looked at the possibility that Emeterio should have purchased the
substitute lighter and guarded against the risk that the lighter might come into a
child's hands. Id. 

 Here, no childproof lighter was available for Jackie Jr.'s parents to purchase. 
The summary judgment evidence shows a childproof lighter could have been made,
but was not produced until at least three years after Jackie Jr. was burned. 

 After reviewing the summary judgment evidence and applying the risk-utility
analysis, we conclude reasonable minds can differ on the outcome of the risk-utility
analysis considerations; therefore, the question in this case involves factual disputes. 
Further, we conclude Kroger has failed to show it is entitled to judgment as a matter
of law, and a fact issue exists under the risk-utility analysis.

 We sustain points of error one, two, and three.

Conclusion

 We reverse the judgment and remand the cause to the trial court.




 Davie L. Wilson

 Justice


Panel consists of Justices Taft, Wilson, and Price. (2)

Publish. Tex. R. App. P. 47.
1. 
 ' 
 
 
 
 ' 
 - 
 - 
 - 
2.