**Gloria Marie HERNANDEZ, as next friend of Ruben Richard Emeterio, a minor, Appellant,**

v.

**TOKAI CORPORATION and Scripto–Tokai Corporation, Appellees.**

No. 98–0857.

Supreme Court of Texas.

Argued on Dec. 9, 1998.

Decided Aug. 26, 1999.

Alberto Luis Guerrero, Victor M. Carrera, McAllen, for Appellant.

Thad D. Spalding, David M. Prichard, Ryan G. Anderson, Christopher Lee Burke, San Antonio, for Appellees.

Justice HECHT delivered the opinion of the Court.

The United States Court of Appeals for the Fifth Circuit has certified to us the following question:

> Under the Texas Products Liability Act of 1993,[1] can the legal representative of a minor child injured as a result of the misuse of a product by another minor child maintain a defective-design products liability claim against the product's manufacturer where the product was intended to be used only by adults, the risk that children might misuse the product was obvious to the product's manufacturer and to its intended users, and a safer alternative design was available? [2]

In the context of this case, the question, more specifically, is whether a disposable butane lighter, intended only for adult use, can be found to be defectively designed if it does not have a child-resistant mechanism that would have prevented or substantially reduced the risk of injury from a child's foreseeable misuse of the lighter. As usual, the Circuit has disclaimed "any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified." [3] Thus advised, we answer, in the factual setting presented, that:

- none of the conditions stated in the question precludes imposition of liability, but neither are they together enough to establish liability;

- proof of an available "safer alternative design", as defined by statute, is nec-

---

**1.** Act of Feb. 24, 1993, 73rd Leg., R.S., ch. 5, 1993 Tex. Gen. Laws 13, codified as TEX. CIV. PRAC. & REM.CODE §§ 16.012, 82.001–.006.

**2.** 154 F.3d 224, 225 (5th Cir.1998).

**3.** *Id.*

essary but not sufficient for liability; the claimant must also show that the product was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use; and

- in determining whether a product is unreasonably dangerous, the product's utility to its intended market must be balanced against foreseeable risks associated with use by its intended users.

Our answer requires the following explanation and elaboration.

## I

The factual circumstances in which the certified question comes to us are these.

Rita Emeterio bought disposable butane lighters for use at her bar. Her daughter, Gloria Hernandez, took lighters from the bar from time to time for her personal use. Emeterio and Hernandez both knew that it was dangerous for children to play with lighters. They also knew that some lighters were made with child-resistant mechanisms, but Emeterio chose not to buy them. On April 4, 1995, Hernandez's five-year-old daughter, Daphne, took a lighter from her mother's purse on the top shelf of a closet in a bedroom in her grandparents' home and started a fire in the room that severely burned her two-year-old brother, Ruben.

Hernandez, on Ruben's behalf, sued the manufacturers and distributors of the lighter, Tokai Corporation and Scripto–Tokai Corporation (collectively, "Tokai"), in the United States District Court for the Western District of Texas, San Antonio Division. Asserting strict liability and negligence claims, Hernandez alleged that the lighter was defectively designed and unreasonably dangerous because it did not have a child-resistant safety mechanism that would have prevented or substantially reduced the likelihood that a child could have used it to start a fire. Tokai does not dispute that mechanisms for making disposable lighters child-resistant were available when the lighter Daphne used was designed and marketed, or that such mechanisms can be incorporated into lighters at nominal cost.

Tokai moved for summary judgment on the grounds that a disposable lighter is a simple household tool intended for adult use only, and a manufacturer has no duty to incorporate child-resistant features into a lighter's design to protect unintended users—children—from obvious and inherent dangers. Tokai also noted that adequate warnings against access by children were provided with its lighters, even though that danger was obvious and commonly known. In response to Tokai's motion, Hernandez argued that, because an alternative design existed at the time the lighter at issue was manufactured and distributed that would have made the lighter safer in the hands of children, it remained for the jury to decide whether the lighter was defective under Texas' common-law risk-utility test.

The federal district court granted summary judgment for Tokai, and Hernandez appealed.

## II

### A

Although the certified question references a 1993 Act adopting several statutes pertaining to products liability,[4] the parties confine their arguments to the effect of a portion of one such statute, section 82.005(a) and (b) of the Texas Civil Practice and Remedies Code, applicable to cases like this one that accrued on or after September 1, 1993. We therefore limit our discussion to those provisions, which are as follows:

    (a) In a products liability action in which a claimant alleges a design defect, the

---

4. *Supra* note 1.

burden is on the claimant to prove by a preponderance of the evidence that:

(1) there was a safer alternative design; and

(2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.

(b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:

(1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

(2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Section 82.005 does not attempt to state all the elements of a product liability action for design defect. It does not, for example, define design defect or negate the common law requirement that such a defect render the product unreasonably dangerous. Additionally, the statute was not intended to,[5] and does not, supplant the risk-utility analysis Texas has for years employed in determining whether a defectively designed product is unreasonably dangerous.[6] That analysis involves consideration of several factors, which we listed in *American Tobacco Co. v. Grinnell* as including:

(1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and (5) the expectations of the ordinary consumer.[7]

■ Rather, section 82.005 prescribes two elements—a safer alternative design and producing cause—that must be proved, but are not alone sufficient, to establish liability for a defectively designed product. Section 82.005 reflects the trend in our common-law jurisprudence of elevating the availability of a safer alternative design from a factor to be considered in the risk-utility analysis to a requisite element of a cause of action for defective design.[8] The

5. *See Debate on Tex. S.B. 4 on the Floor of the Senate,* 73rd Leg., R.S. (Feb. 24, 1993); *Debate on Tex. S.B. 4 on the Floor of the House,* 73rd Leg., R.S. (Feb. 22–23, 1993); *Debate on Tex. S.B. 4 on the Floor of the Senate,* 73rd Leg., R.S. (Jan. 28, 1993).

6. *Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 (Tex.1979). *Cf.* Tex. Civ. Prac. & Rem.Code § 82.006 (adopting a consumer-expectation test for claims that firearms and ammunition are defectively designed).

7. 951 S.W.2d 420, 432 (Tex.1997).

8. *Compare Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 746 (Tex.1980) ("The jury may consider many factors before deciding whether a product's usefulness or desirability are outweighed by its risks. Their finding on defectiveness may be influenced by evidence of a safer design that would have prevented the injury. Because defectiveness of the product in question is determined in relation to safer alternatives, the fact that its risks could be diminished easily or cheaply may greatly influence the outcome of the case." (citations omitted.)), *with Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384 (Tex. 1995) ("[I]f there are no safer alternatives, a product is not unreasonably dangerous as a matter of law." (citing *Boatland,* 609 S.W.2d at 748)), *and Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 335 n. 4 (Tex.1998) (observing that the Court "made clear in *Caterpillar* that a safer alternative is a prerequisite to a finding of design defect"). *See also* Comm. on Pattern Jury Charges, State Bar of

*Restatement (Third) of Torts: Products Liability* also makes a reasonable alternative design a prerequisite to design-defect liability,[9] as does the law in most jurisdictions.[10]

■ Whether a defective-design action can be maintained under the circumstances posed in the certified question does not, therefore, depend entirely on section 82.005. A claimant must not only meet the proof requirements of the statute but must show, under the common law, that the product was defectively designed so as to be unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use.[11] To respond to the certified question, we must consider not only the requirements of section 82.005 but those of the common law as well.

**B**

The certified question inquires whether a defective-design action can be maintained under several conditions.

■ 1. *A child was injured not by his own use of the product but by another child's use.* In *Darryl v. Ford Motor Co.,* we held that a bystander injured by another's use of a defective product could recover against the product manufacturer.[12] In that case plaintiffs were injured when their car was struck from behind by a truck with defective brakes. In some situations the relationship between the product defect and the plaintiff's injury might be too attenuated to allow recovery,[13] but that does not appear to be the case here. Thus, Ruben is not precluded from recovering against Tokai because he was burned as a result of his sister's use of the lighter and not by his own use.

■ 2. *The injury was caused by a child's misuse of the product, the risk of which was obvious to the product manufacturer.* Implicit in the question is that it was also obvious to the manufacturer that an intended adult user would allow a child access to the product. Foreseeability of risk of harm is a requirement for liability for a defectively designed product; a product need not be designed to reduce or avoid unforeseeable risks of harm.[14] Risk must be assessed in light of both the gravity and the likelihood of injury from a product's use.[15] But the fact that the foreseeable risk of harm is due to a misuse of the product, rather than an intended use, is not an absolute bar to liability for that portion of an injury caused by a product's defective design. Instead, misuse of a product is a factor that must be considered in allocating responsibility for the injury.[16]

TEX., TEXAS PATTERN JURY CHARGES—MALPRACTICE, PREMISES & PRODUCTS PJC 71.4B (1997) (stating in part: "A 'design defect' is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist there must have been a safer alternative design.").

9. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b) (1998) ("A product ... is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design ..., and the omission of the alternative design renders the product not reasonably safe".).

10. *See* M. STUART MADDEN, 1 PRODUCTS LIABILITY § 8.3, at 299 (2d ed. 1988) ("[T]he majority rule posits that plaintiff cannot establish a prima facie case of defective design without evidence of a technologically feasible, and practicable, alternative to defendant's product that was available at the time of manufacture.").

11. *See American Tobacco,* 951 S.W.2d at 432; *Turner,* 584 S.W.2d at 847–48.

12. 440 S.W.2d 630, 633 (Tex.1969).

13. *See* WILLIAM POWERS, JR., TEXAS PRODUCTS LIABILITY LAW § 9.024 (2d ed.1994).

14. *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b) (1998).

15. *American Tobacco,* 951 S.W.2d at 432.

16. *General Motors Corp. v. Sanchez,* 997 S.W.2d 584, 594 (Tex.1999); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 423, 428

In this case, misuse of the lighter by Daphne, Hernandez, or Emeterio does not preclude Ruben from recovering damages caused by the lighter's allegedly defective design.

**3. The risk of injury from a child's misuse of the product was also obvious to the product's intended adult users.** The fact that a product user is or should be aware of the existence and avoidability of dangers inherent in a product's use that are obvious, commonly known, or warned against, is an important consideration in determining whether the product is unreasonably dangerous.[17] In the risk-utility analysis, that fact may even be decisive in a particular case.[18] But in general, the obviousness of danger in and of itself is not an absolute bar—like certain affirmative defenses—to liability for a defective design.[19] Thus, while Hernandez and Emeterio's acknowledged awareness of the dangers involved in allowing children access to lighters weighs against a finding that Tokai's lighter was unreasonably dangerous as designed, it is not, by itself, an absolute bar to recovery. Whether this factor is determinative in this case is a question that must be decided by applying the risk-utility analysis in the federal court proceeding.

**4. A safer alternative was available.** This is a prerequisite to liability under section 82.005(b), as it has come to be under the common law. The statute requires a claimant to prove that an alternative design (i) would in reasonable probability have prevented or significantly reduced the risk of the claimant's injury or damage (ii) without substantially impairing the product's utility, and (iii) was economically and technologically feasible when the product was manufactured or sold. The relevant risk of injury or damage under the statute is the risk to the claimant; in this case, that risk is that Ruben would be injured in a fire started by his minor sister with a disposable lighter obtained from their mother's purse. The relevant utility is to the intended users of the product, here all adults, according to the certified question. To prove a safer alternative design in the circumstances presented, Hernandez must prove, by a preponderance of the evidence that the child-resistant design available when the lighter was manufactured (the parties all agree that such a design was feasible then) would in reasonable probability have prevented or significantly reduced the risk of Ruben's being burned as a result of his sister's misuse of the lighter without substantially impairing the lighter's utility to the product's intended adult users. As we have already explained, however, proof of a safer alternative design under section 82.005 is necessary but not sufficient to maintain a defective-design claim. The claimant must also prove a design defect, which, under Texas common law, is a condition of the product that renders it "unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use."[20]

**5. The product was intended to be used only by adults.** A product's

---

(Tex.1984); Tex. Civ. Prac. & Rem.Code §§ 33.001–.004.

**17.** *American Tobacco,* 951 S.W.2d at 432.

**18.** *See* Restatement (Third) of Torts: Products Liability § 2 reporters' note at 86 ("Though the obviousness of the danger is one factor in deciding whether a product is defectively designed it can, depending on the facts, become crucial to the determination of defect. Thus, a court may direct a verdict when it is convinced that, given the obviousness of the danger, it is not reasonable to require the adoption of an alternative design." (citations omitted)).

**19.** *American Tobacco,* 951 S.W.2d at 432–433; *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 383 (Tex.1995). *But see* Tex. Civ. Prac. & Rem. Code § 82.004 (prohibiting liability for inherent, commonly known dangers in consumer products intended for personal consumption).

**20.** *Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 n. 1 (Tex.1979).

utility and risk under the common-law test must both be measured with reference to the product's intended users. A product intended for adults need not be designed to be safe for children solely because it is possible for the product to come into a child's hands. In the context of premises liability, we have observed:

> There is virtually no condition upon any land with which a child may not possibly get himself into trouble. He may choke to death on a green apple, pick up a stick and poke it into his eye, or have his skull fractured by a rock found and thrown by his companion. Unless the possessor is to shoulder the impossible burden of making his land completely "child-proof," which might mean razing it to the bare earth, something more is called for than the general possibility of somehow coming to some harm which follows the child everywhere throughout his daily existence.[21]

The same can be said for children and products. A child may hurt himself or others with a hammer, a knife, an electrical appliance, a power tool, or a ladder; he may fall into a pool, or start a car. The manufacturers and sellers of such products need not make them childproof merely because it is possible for children to cause harm with them and certain that some children will do so. The risk that adults, for whose use the products were intended, will allow children access to them, resulting in harm, must be balanced against the products' utility to their intended users.

We have not had occasion to consider the situation presented in this case—a child's misuse of a product intended only for adults—but we have applied the general principle that a product's safety must be assessed in the context of its intended use. In *Caterpillar Co. v. Shears*, we held that a product that is safe for its intended use is not defectively designed merely because it is unsafe in other circumstances.[22] Shears was injured when the front-end loader he was operating was struck from behind by another loader. Shears would not have been injured had the protective canopy over the driver's seat not been removed by his employer. Shears claimed that the canopy should have been designed so that it was not removable. The canopy was designed to be removable so that the loader could be used in areas where there was low vertical clearance and little risk of rollover, the principal danger the canopy was meant to protect against. We concluded, as a matter of law, that the loader was not defectively designed merely because its canopy, which had to be removed for some work, could be removed when it should not have been. Caterpillar was not required to design the loader so that, to be safe in all situations, it could not be used at all in some.[23]

Even if an alternative design does not restrict a product's utility as severely as in *Caterpillar*, it still may not be sufficient for defective-design liability if it overly restricts consumer choice. The *Restatement (Third) of Torts: Products Liability* offers two examples: a smaller car that is not as crashworthy as a larger car merely because it is not as large, and a bulletproof vest that offers only front-and-back protection but is more flexible and comfortable and less expensive than a wraparound model.[24] Consumers are entitled to consider the risks and benefits of the different designs and choose among them. The briefs in this case suggest other examples: a chemistry set for teenagers that

**21.** *McClary v. Jones*, 404 S.W.2d 314, 315 (Tex.1966) (citing WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 59, at 378 (3d ed.1964).

**22.** *See* 911 S.W.2d at 384.

**23.** *Id.* (" 'Texas law does not require a manufacturer to destroy the utility of his product in order to make it safe.' " (quoting *Hagans v. Oliver Mach. Co.*, 576 F.2d 97, 101 (5th Cir. 1978)); *accord, Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex.1998).

**24.** RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. f, illus. 9, 10 at 26–27 (1998).

includes a Bunsen burner and chemicals that most younger children should not be allowed to use; a high-power nail gun that should be used only by experienced carpenters; and a sailboat designed for speed rather than stability that is safe only for more experienced sailors. A chemistry set designed for the ordinary teenager is not unreasonably dangerous solely because it is possible that a younger sibling could get into it and harm himself or others. Products liability law does not force experienced carpenters to use only nail guns that are safe for the garage workshop. A sailboat pilot may choose between speed and stability. To make such products safe for the least apt, and unintended, user would hold other users hostage to the lowest common denominator.

A disposable lighter without a child-resistant mechanism is safe as long as its use is restricted to adults, as its manufacturer and users intend. Tokai makes lighters with and without child-resistant devices. Adults who want to minimize the possibility that their lighter may be misused by a child may purchase the child-resistant models. Adults who prefer the other model, as Hernandez and Emeterio did, may purchase it (although we note that the federal Consumer Product Safety Commission has adopted a safety standard banning the manufacture and importation of non-child-resistant disposable lighters after July 12, 1994).[25] Whether adult users of lighters should be deprived of this choice of product design because of the risk that some children will obtain lighters that are not child-resistant and cause harm is the proper focus of the common-law risk-utility test.

■ The utility of disposable lighters must be measured with reference to the intended adult users. Consumer preference—that is, that users like Hernandez and Emeterio simply prefer lighters without child-resistant features—is one consideration. Tokai also argues that adults whose dexterity is impaired, such as by age or disease, cannot operate child-resistant lighters, but Hernandez disputes this. If Tokai were shown to be correct, then that would be an additional consideration in assessing the utility of non-child-resistant lighters.

■ The relevant risk includes consideration of both the likelihood that adults will allow children access to lighters and the gravity of the resulting harm. The risk is not that a child who plays with a lighter may harm himself. We assume that that risk is substantial. As Hernandez and Emeterio both acknowledged in this case, they would not allow a child to have a lighter and would discipline a child caught playing with one. Rather, the risk is that a lighter will come into a child's hands. The record before us suggests that children will almost certainly obtain access to lighters, that this will not happen often in comparison with the number of lighters sold, but that when it does happen the harm caused can be extreme. Each of these considerations is relevant in assessing the risk of non-child-resistant lighters.

■ In sum, a manufacturer's intention that its product be used only by adults does not insulate it from liability for harm caused by a child who gains access to the product, but liability standards must be applied in the context of the intended users.

### C

■ The determination of whether a product is unreasonably dangerous because of a defective design is often one that involves factual disputes that a party is entitled to have a jury resolve. But that is not always true. *Caterpillar* is an example of risk-utility analysis that is a matter of law. The alternate design urged in that case would have completely precluded some of the uses for which the product was designed and to which it was put. Even if

**25.** 16 C.F.R. § 1210.1 (1999). *See also* Safety Standard for Cigarette Lighters, 58 Fed.Reg. 37,557 (1993) (explaining considerations involved in adopting the safety standard).

a product's utility were less severely impacted by a design change to reduce the risks associated with the product's use, the issue of whether the product is unreasonably dangerous as designed may nevertheless be a legal one if reasonable minds cannot differ on the risk-utility analysis considerations .[26] For example, comment g to section 2 of the *Restatement (Third) of Torts: Products Liability* explains:

> [T]he fact that a product design meets consumer expectations may substantially influence or even be ultimately determinative on risk-utility balancing in judging whether the omission of a proposed alternative design renders the product not reasonably safe.[27]

Whether in the present case the issue is one of fact or law is not for us to decide. The Fifth Circuit has asked whether a defective-design claim can be maintained under stated conditions. We respond that it can, depending on the evidence, but there will also be cases—the present case may or may not be one—in which a claim cannot be maintained as a matter of law, for the reasons we have explained.

## III

A few other arguments remain to be addressed.

■ Tokai contends that a defective-design claim cannot be maintained in the circumstances before us because a manufacturer has no duty whatsoever to make products intended solely for adults child-proof. As we have explained, a product that is safely designed for its intended users is not unreasonably dangerous solely because someone else may obtain the product. But we think the issue should be resolved by applying the standard risk-utility analysis rather than as a matter of legal policy, at least in the circumstances of this case.

■ Tokai also contends that simple tools, like hammers and knives, whose essential utility involves intrinsic and obvious dangers to children, should not, as a matter of law, be unreasonably dangerous. A few other courts have adopted this approach,[28] but we do not think it helpful. The obviousness of the risk of harm and the inherent nature of the danger are, as we have explained, important factors to be considered in determining whether a product is unreasonably dangerous, and in a given case they may be conclusive of that issue. But that depends on an assessment of all the relevant considerations in the risk-utility analysis, not on whether a product can be called a simple tool. Many simple tools are not defectively designed merely because they are not child-proof, but the reason is because they are not unreasonably dangerous under the risk-utility test, not because they are simple tools.

■ Tokai argues that the risk-utility analysis is ill-suited for cases like this when the utility of a product design is largely satisfaction of consumer preference and the risk of harm, while improbable relative to the number of products sold, is often calamitous. We recognize that such circumstances make the use of the risk-utility test difficult. Difficulties in applying the risk-utility test have prompted the Legislature to prescribe a consumer-expectation test for firearms and ammuni-

**26.** *See Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 487 (Tex.1995) (" 'Where reasonable minds cannot differ, the issue is one of law rather than one of fact.' " (quoting *Logan v. Mullis,* 686 S.W.2d 605, 608 (Tex.1985))).

**27.** *I d.* cmt. g at 28.

**28.** *See Kirk v. Hanes Corp.,* 16 F.3d 705 (6th Cir.1994) (following *Adams v. Perry Furniture*

*Co.,* 198 Mich.App. 1, 497 N.W.2d 514 (1993)); *see also Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1411 (7th Cir.1994) (en banc) (Illinois law) (basing its determination " 'not only [on] the obvious nature of the danger here but, also, [on] the simple nature of the mechanism involved' " (quoting *Scoby v. Vulcan–Hart Corp.,* 211 Ill.App.3d 106, 155 Ill.Dec. 536, 569 N.E.2d 1147, 1151 (1991))).

tion,[29] a test on which other courts have relied in cases like the one before us involving disposable lighters.[30] But we are reluctant to carve out exceptions to the risk-utility test that we have employed for years and that has been adopted by the *Restatement*, especially when consumer expectation is a factor to be considered in applying the risk-utility test and may in some cases outweigh all other considerations.[31] We believe that the risk-utility test, properly focused, can be applied in a case like this.

Tokai also argues that as a simple matter of policy, parents are in a far better position to prevent children from causing harm with products like disposable lighters than manufacturers are. While we do not disagree with this, we think it should be factored into the risk-utility analysis and the determination of causation rather than used to preempt all causes of action in which it might be raised.

Tokai argues that the weight of authority in other jurisdictions is to reject disposable lighter design-defect claims as a matter of law. This is true, but there is more to it. Courts in jurisdictions that employ a consumer-expectation test for determining defect have mostly held that disposable lighters without childproof features are not defectively designed because they function in the manner expected by the intended adult consumers.[32] But courts in jurisdictions employing a risk-utility analysis have mostly concluded that the determinative considerations are usually matters for the jury.[33] Courts in risk-utility jurisdictions that have rejected disposable lighter design-defect claims as a matter of law have reasoned that the test for liability should apply differently to "simple tools" like disposable lighters.[34]

29. Tex. Civ. Prac. & Rem.Code § 82.006(a)(1).

30. *See Todd v. Societe Bic, S.A.*, 21 F.3d 1402 (7th Cir.1994) (en banc) (Illinois law) (deciding that the consumer-expectation test was better suited than the risk-utility test for determining whether the lack of a child-resistant mechanism on a disposable lighter constituted a design defect); *see also Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254 (4th Cir.1998) (South Carolina law); *Floyd v. BIC Corp.*, 790 F.Supp. 276 (N.D.Ga. 1992) (holding that the danger was open and obvious, although the Georgia Supreme Court has since adopted a risk-utility test for liability and rejected the obviousness of a risk as a complete defense, *see Ogletree v. Navistar Int'l Transp. Corp.*, 269 Ga. 443, 500 S.E.2d 570 (1998)); *Curtis v. Universal Match Corp.*, 778 F.Supp. 1421 (E.D.Tenn.1991), *aff'd mem.*, 966 F.2d 1451 (6th Cir.1992) (applying a consumer expectation test, although the Tennessee Supreme Court has since interpreted its statute as invoking a dual consumer-expectation and risk-utility analysis, *see Ray, Holman v. BIC Corp.*, 925 S.W.2d 527 (Tenn.1996)); *Sedlock v. Bic Corp.*, 741 F.Supp. 175 (W.D.Mo.1990); *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810 (Ind.Ct.App.1995).

31. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex.1997).

32. *See Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254 (4th Cir.1998) (South Carolina law); *Todd v. Societe Bic, S.A.*, 21 F.3d 1402 (7th Cir.1994) (en banc) (Illinois law); *Floyd v. BIC Corp.*, 790 F.Supp. 276 (N.D.Ga.1992) (holding that the danger was open and obvious, although the Georgia Supreme Court has since adopted a risk-utility test for liability and rejected the obviousness of a risk as a complete defense); *Curtis v. Universal Match Corp.*, 778 F.Supp. 1421 (E.D.Tenn.1991), *aff'd mem.*, 966 F.2d 1451 (6th Cir.1992); *Sedlock v. Bic Corp.*, 741 F.Supp. 175 (W.D.Mo.1990); *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810 (Ind.Ct.App. 1995).

33. *See Price v. BIC Corp.*, 142 N.H. 386, 702 A.2d 330 (1997); *Perkins v. Wilkinson Sword, Inc.*, 83 Ohio St.3d 507, 700 N.E.2d 1247 (1998); *Ray, Holman v. BIC Corp.*, 925 S.W.2d 527 (Tenn.1996); *Campbell v. BIC Corp.*, 154 Misc.2d 976, 586 N.Y.S.2d 871 (1992); *see also Bean v. BIC Corp.*, 597 So.2d 1350 (Ala.1992) (considering, apparently, a claim of negligence); *Boumelhem v. Bic Corp.*, 211 Mich.App. 175, 535 N.W.2d 574 (1995) (following a prior court of appeals case which rejected a disposable lighter claim as a matter of law, but disagreeing that that approach was proper under Michigan's risk-utility analysis).

34. *See Kirk v. Hanes Corp.*, 16 F.3d 705 (6th Cir.1994) (following *Adams v. Perry Furniture Co.*, 198 Mich.App. 1, 497 N.W.2d 514 (1993)).

Finally, the Products Liability Advisory Council, as amicus curiae, argues that when a market for a product is segmented such that identifiable groups of users require or prefer different designs, the determination that a product is defectively designed should be made with reference to the market segment for which the product is intended. Although we believe our analysis in this case is consistent with this argument, Tokai has not asserted that the market for its lighters is segmented.

\* \* \* \* \*

In sum: a claimant can maintain a defective-design claim in the circumstances posited by the certified question if, but only if, with reference to the product's intended users, the design defect makes the product unreasonably dangerous, a "safer alternative design" as defined by statute is available, and the defect is the producing cause of the injury.