# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 19, 2011

Lyle W. Cayce
Clerk

No. 10-10660

STUART GOODNER; LISA GOODNER, Individually and as Legal Heirs of the ESTATE OF SARAH GOODNER, deceased, and as next friends to R.G., a minor,

Plaintiffs – Appellees

v.

HYUNDAI MOTOR COMPANY, LIMITED

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, DENNIS, and PRADO, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this design defect case, Hyundai Motor Company Limited appeals a jury verdict in favor of Stuart and Lisa Goodner after their daughter, Sarah, sustained fatal injuries in an automobile accident. Hyundai argues there was insufficient evidence for a reasonable jury to have found that a design defect was the producing cause of Sarah's injuries. Applying the deferential standard of review required when examining jury verdicts, we affirm the judgment.

I.

In July 2007, R.G., 16-years-old at the time, and her 19-year-old sister, Sarah, drove five hours from their home outside of Dallas to watch their younger

No. 10-10660

sister play in a softball tournament. The next morning, after sleeping for only five hours, Sarah and R.G. started the long drive back home.

Mrs. Goodner told Sarah not to let R.G. drive because she was tired and a young driver. However, R.G. started the drive, and the girls planned to switch drivers later. Sarah reclined the passenger seat of the 2005 Hyundai Tucson SUV and napped while her sister drove.[1] With the cruise control set to around 80 miles per hour, R.G. started falling asleep at the wheel, drifting off the highway. Sarah woke her, and R.G. overcorrected twice. The overcorrection caused the vehicle to drive off the road and crash into a barbed wire fence. Once off-road, the SUV rolled over three complete times before eventually stopping upright.

Both girls were wearing their seatbelts, and R.G. sustained only minor injuries. Sarah, however, was ejected from the vehicle. She was air-lifted to a nearby hospital but died en route.

The Goodner parents, Stuart and Lisa, filed suit against Hyundai and proceeded to trial on a strict liability design defect claim. The Goodners argued that the front passenger seat and the restraint system were defective because the seat could recline to an unsafe position—according to their expert, any recline of more than 45 degrees—permitting Sarah to be ejected from the vehicle even though she was wearing a seatbelt. After the plaintiffs rested their case, Hyundai moved for judgment as a matter of law under Rule 50, arguing that the Goodners had failed to prove the seat design was unreasonably dangerous. The district court denied the motion. Hyundai then renewed the motion at the jury charge conference, and it was again denied.

---

[1] The parties dispute how far the seat was reclined at the time of the accident. Plaintiffs' expert testified that Sarah's seat was reclined approximately 65 degrees. A defense expert testified that the recline was close to 60 degrees. A seat reclined 20 to 25 degrees is considered "the nominal seating position."

No. 10-10660

The jury found that a design defect was "a producing cause of the occurrence or injuries in question." The jury assigned 45% responsibility to R.G., 10% to Sarah, and 45% to Hyundai, awarding $900,000 each to Stuart and Lisa for loss of companionship and mental anguish. The final judgment was reduced to $405,000 for each parent, based on the liability allocations.

Hyundai timely appealed, claiming that the district court should have granted its motion for judgment as a matter of law.

## II.

If the issue is properly preserved, this court reviews *de novo* a district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court.[2] In order to survive a Rule 50 motion, "the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim."[3] We are "wary of upsetting jury verdicts"[4] and will "uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary."[5] In other words, the "jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did."[6]

When considering Rule 50 motions, a court "should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed

---

[2] *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 481 (5th Cir. 2008).

[3] *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002).

[4] *Travelers*, 542 F.3d at 481.

[5] *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001).

[6] *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008) (internal quotation marks omitted); *see* Fed. R. Civ. P. 50(a)(1).

No. 10-10660

to the motion."[7]  Although the federal standards of review apply, a court sitting in diversity, as here, "refers to state law for the kind of evidence that must be produced to support a verdict."[8]  Texas law will thus be used to determine the evidence the Goodners must produce to support their design defect claim.

Under Texas law, "[t]o recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery."[9]  On appeal, Hyundai asserts that the Goodners failed to prove each of these three elements.

III.

Unreasonable dangerousness is a common law element evaluated using the following five factors:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; (5) the expectations of the ordinary consumer.[10]

---

[7] *Mosley v. Excel Corp.*, 109 F.3d 1006, 1008–09 (5th Cir. 1997) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)); *see Cousin*, 246 F.3d at 366.

[8] *Wackman v. Rubsamen*, 602 F.3d 391, 400 (5th Cir. 2010) (internal quotation marks omitted).

[9] *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009).

[10] *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999) (quoting *Amer. Tobacco Co. v. Grinnell*, 951 S.W. 2d 420, 432 (Tex. 1997)).

No. 10-10660

This "risk-utility analysis does not operate in a vacuum, but rather in the context of the product's intended use and its intended users."[11]  Generally, unreasonable dangerousness is a question of fact for the jury.  It only becomes a matter of law if reasonable minds cannot differ.[12]  Evidence on the five factors may be presented to the jury, but the factors themselves are not set out as a definitional requirement of design defect.[13]  Here, the jury instructions defined "design defect" as "a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use."  For courts considering judgment as a matter of law, the five factors are evaluated holistically; no single factor needs to be proven on its own, so long as all factors working together point to a finding of unreasonable dangerousness.[14]

The holistic analysis of the five factors does not compel judgment in Hyundai's favor as a matter of law.  The first factor is a cost-benefit analysis of the utility of the design, here, a seat that can recline, compared to the risk to users.  The evidence did not show a high utility for a seat that can recline more than 45 degrees, and the Goodners' expert testified that a reclined seat significantly increases the risk of ejection.  While consumer preference is a consideration in the risk-utility analysis,[15] limiting seat recline would not "impose liability in such a way as to eliminate whole categories of useful

---

[11] *Gish*, 286 S.W.3d at 312.

[12] *Hernandez*, 2 S.W.3d at 260–61.

[13] *See Shipp v. Gen. Motors Corp.*, 750 F.2d 418, 421–22 (5th Cir. 1983); *Turner v. Gen. Motors Corp.*, 584 S.W.2d 844, 848–49 (Tex. 1979).

[14] *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997).

[15] *See Hernandez*, 2 S.W.3d at 260 (finding that some adults may prefer lighters that are not child-resistant and consumer preference should be considered).

5

products from the market."[16]  There may be some benefits to a fully reclining seat, such as carrying cargo or napping at a rest stop, but a jury would not be unreasonable in concluding that the risks of this design outweigh the benefits.

The second factor, availability of an alternative, requires the jury to have reason to find that a proposed substitute is available that would not increase the risk for harm.  The Goodners proposed limiting the seat recline to 45 degrees, a design which other car manufacturers had implemented.  There was no indication that a seat with its recline limited to 45 degrees would create new hazards, other than possibly prohibiting a small subset of the population from purchasing very compact cars.  Thus, the second factor weighs in favor of upholding the verdict.  The third factor, the manufacturer's ability to eliminate the defect without impairing usefulness or significantly increasing cost, overlaps with the first two factors.  There was evidence supporting a conclusion that Hyundai could have limited the recline of the seat without seriously impairing the overall usefulness of the seat or car.  Indeed, the Hyundai Tucson's rear seats had a limited recline as did the front seats of competitor's vehicles.

The fourth and fifth factors involve consumer expectations and the user's ability to avoid harm through general knowledge or suitable warnings.  Under Texas law "[w]hether the risk of injury is common knowledge is a question of law, not fact."[17]  However, the Supreme Court of Texas "did not foreclose the possibility that in some situations there could be a fact question about whether consumers have common knowledge of risks associated with a product."[18]  This is such a situation—it is not a matter of law whether the risk of injury from a

---

[16] *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995).

[17] *Gish*, 286 S.W.3d at 313.

[18] *Caterpillar*, 911 S.W.2d at 383.

No. 10-10660

reclining seat is common knowledge.[19]  Rather, common knowledge on reclining seats requires factual analysis, creating a jury question.

The only warnings against seat recline were in the owner's manual. Although a Hyundai expert testified these warnings were adequate, the jury is free to disregard his testimony and rely on their own impressions of the warnings admitted into evidence.  There is no evidence that the jury improperly considered the fourth or fifth factors in reaching its verdict.

A holistic analysis of the unreasonable dangerousness factors does not "so strongly and so overwhelmingly" favor Hyundai as to create a matter of law. There was sufficient evidence for the jury to find that the SUV's seat design was unreasonably dangerous.

IV.

Next, Hyundai contends that the Goodners failed to prove there was an available safer alternative design.  "Safer alternative design" is defined by statute to mean a product design that in reasonable probability "would have prevented or significantly reduced the risk of the claimant's personal injury" and "was economically and technologically feasible at the time the product left the control of the manufacturer."[20]  Although Hyundai adequately preserved its challenge to the first element, its Rule 50 motion did not challenge the economic and technological feasibility of the proposed safer alternative designs.

A motion for judgment as a matter of law must "specify the judgment sought and the law and facts that entitle the movant to the judgment."[21]  The focus at trial, by both Hyundai and the Goodners, was on causation and

---

[19] *Cf. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385 (Tex. 1991) (finding that the danger of excessive alcohol consumption was generally known and did not require a warning).

[20] Tex. Civ. Prac. & Rem. Code § 82.005(b).

[21] Fed. R. Civ. Pro. 50(a)(2); *see McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 672 (5th Cir. 1993).

No. 10-10660

unreasonable dangerousness.  One of the statutorily required elements to find a safer alternative design—whether the product would have prevented or significantly reduced the claimant's injuries—is also encompassed in the unreasonable dangerousness calculus.  But feasibility is a separate element, only arising in the safer alternative design statute.

The focus throughout trial was on causation and unreasonable dangerousness, not feasibility.  In closing arguments, Hyundai's trial counsel continued with his strategic decision to rest on causation.  Counsel turned the jury away from questions of other issues, telling the jury: "And then economically and technologically feasible.  You know, economically and technologically feasible with regard to a 45-degree recline angle--I'm not saying we couldn't have done that; there just wasn't a reason to do it."  Counsel then quickly turned to his argument that there was no proof that the safer alternative design would have prevented Sarah's injuries.

Consistent with counsel's trial strategy, when making the Rule 50 motion in open court, counsel did not challenge the sufficiency of the safer alternative design evidence.  The transcript reads: "They might have some evidence--and, of course, we dispute it--that it's a safer alternative design, but in terms of that first element, that it's unreasonable for this to have a seat that would recline, they just simply don't have enough evidence to get there."  Likewise, Hyundai's Rule 50(b) brief did not mention feasibility, stating that "plaintiffs failed to present sufficient evidence that (1) the product at issue was unreasonably dangerous or (2) that the alleged design defect was a producing cause of Sarah Goodner's death."  In sum, trial counsel focused the case on unreasonable dangerousness and causation, which to our eyes on this record was both an understandable and wise strategic decision, while appellate counsel now attempts to summon up sufficiency of the evidence on economic feasibility.

No. 10-10660

We must conduct "an evaluation of whether [a Rule 50] motion sufficiently alerted the court and the opposing party to the sufficiency issue."[22] For Hyundai to be entitled to de novo review of its motion for directed verdict, it must have been specific in its sufficiency challenge so that the plaintiffs would be aware of any "insufficiency before the case [was] submitted to the jury."[23] Because Hyundai did not raise the issue of economic or technological feasibility at trial, our standard of review shifts, and we will only reverse the judgment if it results in a "manifest miscarriage of justice."[24] In other words, "the question before this Court is not whether there was substantial evidence to support the jury verdict, but whether there was *any* evidence to support the jury verdict."[25]

The Goodners presented three alternative designs: (1) a seatbelt mechanism integrated into the seat, also known as the "all-belts-to-seat" model; (2) a seat that cannot recline more than 45 degrees; and (3) an interlock device that prevents the vehicle from operating when the seat is significantly reclined. Of these, the second alternative was sufficiently proven for a reasonable jury to conclude it met the statutory requirements.[26]

To succeed on their design defect claim, the Goodners must have shown that a safer alternative—limiting the seat recline to a 45 degree angle—would have prevented or significantly reduced the risk of Sarah's injuries. The Goodners' expert, Stephen Syson, testified that seats reclined more than a 45

---

[22] *Polanco v. City of Austin*, 78 F.3d 968, 975 (5th Cir. 1996).

[23] *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007) (internal quotation marks omitted).

[24] *McCann*, 984 F.2d at 673 (internal quotation marks omitted).

[25] *Id.*

[26] Because we find that the limited seat recline is a sufficient alternative to withstand appeal, we do not discuss whether the integrated seatbelts or the interlock device would also have met this standard.

degree angle lead to a significantly increased risk of ejection. He further testified that ejection increases the risk of serious injury or death by six to thirteen times. The Texas statute only requires proof of a safer alternative design that "in reasonable probability" would have reduced the claimant's injuries, which Syson's testimony adequately provided.

The Goodners must also provide evidence of technological and economic feasibility. Under Texas law, the use of an alternative design by another manufacturer may establish technological feasibility.[27] Syson testified that other car manufacturers had limited their seats' recline to 45 degrees, which satisfies the evidentiary burden. Hyundai's expert also admitted that limiting the seat recline was possible.

A few Texas appellate courts have found that the use of an alternative design by another manufacturer alone cannot establish economic feasibility.[28] Whatever its sufficiency by stricter measures, the Goodners presented sufficient evidence on this issue such that we cannot find a manifest miscarriage of justice. Syson testified that alternative designs were economically feasible, which he defined as a cost that would not "render the vehicle so expensive that it's impractical to purchase it." Moreover, the Goodners presented evidence during a cross-examination of a Hyundai expert that the 2005 Hyundai Tucson—the vehicle in question here—limited the rear seats' recline to 45 degrees. The feasibility of installing this design in the rear seats is *some* evidence that it

---

[27] *Honda of Am. Mfg. Inc. v. Norman*, 104 S.W.3d 600, 607 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

[28] *See id.*; *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 306 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *see also Champion v. Great Dane Ltd. Partnership*, 286 S.W.3d 533, 541 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("The fact that another manufacturer uses an alternative design may be evidence of the technical feasibility of that design. However, economic feasibility refers to the cost of producing a particular design.").

No. 10-10660

would be possible to install this feature in the front seats. There was no manifest miscarriage of justice.

## V.

Finally, Hyundai contends that the Goodners failed to meet their evidentiary burden in demonstrating that the design defect was the producing cause of Sarah's fatal injuries. Texas courts define producing cause as one that is "a substantial factor in bringing about an injury, and without which the injury would not have occurred."[29] Further, "causation generally is a question of fact for the jury."[30] However, if all the facts and inferences point so strongly against causation that no reasonable jury could find causation, then the district court should grant judgment as a matter of law.[31] "[C]ausation need not be supported by direct evidence. Circumstantial evidence and reasonable inferences therefrom are a sufficient basis for a finding of causation,"[32] but "[p]roof of causation requires more than conjecture or guess."[33]

Syson testified that Hyundai's seat recline caused Sarah's ejection and that ejection significantly increases the risk of serious injury or death. In addition, the jury could consider that the driver of the vehicle, who was not reclined and was not ejected, sustained only minor injuries. The district court prohibited Syson from testifying as to the ultimate issue—that the seat recline caused Sarah's injuries—because he was unqualified to reach this conclusion. However, the jury could make a reasonable inference, based on Syson's testimony and comparing Sarah's injuries to those of her sister, to find that the

---

[29] *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007).

[30] *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 237 (5th Cir. 2003).

[31] *Id.*

[32] *Tompkins v. Cyr*, 202 F.3d 770, 782 (5th Cir. 2000).

[33] *Mosley*, 109 F.3d at 1009.

11

seat recline was a substantial factor in bringing about Sarah's injuries. Since causation is generally a question of fact for the jury, there are not enough inferences pointing against causation here to support overturning the jury verdict.

After oral argument, Hyundai directed our attention to a recent Texas Supreme Court case, *BIC Pen Corp. v. Carter*,[34] which reversed a products liability judgment in favor of a plaintiff. There, the Texas Supreme Court sought specific evidence of causation, including expert testimony, to prove that a child would not have been able to light a lighter but for manufacturing defects. The court held that in order to demonstrate the lighter's manufacturing defect caused a fire, the plaintiffs must present evidence on how a child's dexterity, strength, motivation, hand size, and knowledge would interact with the biomechanical flaws of the defective lighter. Hyundai urges that in both *BIC Pen* and this case, no expert testified that the defect caused the injury.

*BIC Pen* stated that expert testimony "is generally required," not always required, to prove causation.[35] Here, the Goodners' expert testified that the seat recline caused Sarah's ejection. This element of causation is the most technical, involving the physics of both the car and accident, and may be of the nature that the Texas Supreme Court suggested requires an expert's testimony. In addition, the expert testified that ejection greatly increases the risk of injury, another component that might require an expert's analysis. Once sufficient evidence of these two elements was established, however, it was not unreasonable for the jury, without an expert's testimony, to infer causation. *BIC Pen* does not require an alternative finding by this court. The Goodners presented expert testimony

---

[34] No. 09-0039, 2011 WL 2420125 (Tex. June 17, 2011).

[35] *Id.* at *6.

on some of the causation elements, and other reasonable inferences are sufficient to find that the seat's design caused Sarah's injuries.

Although some facts weighed against causation, there remained "a conflict in substantial evidence" regarding whether seat reclination caused Sarah's injuries.[36] The evidence on causation is far from being overwhelmingly in favor of Hyundai as to allow us to upset a jury verdict.

## VI.

The facts and inferences in this case do not point so overwhelmingly in favor of Hyundai such that any reasonable jury would have been obligated to reach a verdict in its favor. This is a close, complex case, but our system relies on juries to evaluate the evidence and reach an outcome. It is not the role of this court to second-guess jurors, so long as there was a legally sufficient evidentiary basis for their verdict. In this case, there was. The judgment is AFFIRMED.

---

[36] *Mosley*, 109 F.3d at 1009 (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc) (internal quotation marks omitted)).