# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2012

No. 11-10349
Summary Calendar

Lyle W. Cayce
Clerk

DELAIN SCOTT, Individually and as Next Friend for Kayden Accardo,

Plaintiff–Appellant

v.

DOREL JUVENILE GROUP, INCORPORATED, also known as Dorel Industries Incorporated,

Defendant–Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-799

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In April 2006, Plaintiff–Appellant Delain Scott had a baby girl—K.A. Later that year, Bobbie Scott, Delain's mother and K.A.'s grandmother, purchased Defendant–Appellee Dorel Juvenile Group's Safety First 516A latches for Bobbie's kitchen cabinets.  The latches that Bobbie purchased can be

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

installed with or without a catch.  Bobbie installed the latches without the catch.
Bobbie experienced no problems with the latches until April 17, 2007.  On that
day, Delain and K.A. were over at Bobbie's house.  All three of them were in the
kitchen with Bobbie and Delain preparing dinner and K.A. playing on the
kitchen floor.

Both Bobbie and Delain lost track of K.A. for about thirty to sixty seconds
in light of their dinner preparations.  Prior to this time, Delain had last seen
K.A. sitting on a rug in front of the kitchen sink cabinet drinking from her sippy
cup.  That cabinet was one of the ones to which Bobbie had installed Dorel's
latch.  Among other things in that cabinet was a can of Drano Crystals, a drain
cleaner.  After the thirty- to sixty-second period, Delain looked down to find K.A.
foaming from the mouth.  Next to K.A. was an open and spilled can of Drano; the
kitchen sink cabinet was open.  As a result of this accident, K.A. is mute,
breathes through a permanent trach in her neck, and can only eat through a
feeding tube.

Delain brought the case initially in Texas state court, asserting failure to
warn, manufacturing defect, design defect, negligence, gross negligence, and
breach of express and implied warranty claims.  Defendants Dorel and S.C.
Johnson & Son (Drano's manufacturer) removed the case to the United States
District Court for the Northern District of Texas.  S.C. Johnson settled with
Delain.  Dorel moved for summary judgment, which the district court granted
on all claims.  Delain appeals the district court's summary judgment order only
as to the design defect, negligence (including gross negligence), and breach of
express and implied warranty claims.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

We review a district court's grant of summary judgment de novo, applying
the same standards as the district court.  *Hernandez v. Yellow Transp., Inc.*, 641
F.3d 118, 124 (5th Cir. 2011).  Summary judgment is appropriate where the

movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(a)). In reviewing the record, all facts and inferences are construed in the light most favorable to the non-movant. *Id.* However, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Id.* (internal quotation marks omitted).

Where, as here, federal jurisdiction is based on diversity, we apply the substantive law of the forum state. *Aubris Res. LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483, 486 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)) (additional citation omitted). In resolving issues of Texas law, we look to the decisions of the Texas Supreme Court. *Packard v. OCA, Inc.*, 624 F.3d 726, 730 (5th Cir. 2010). If there is no decision directly on point, then we must determine how that court, if presented with the issue, would resolve it. *Id.* In making this determination, "[t]he decisions of Texas intermediate appellate courts may provide guidance, but are not controlling." *Id.*

## III.  DISCUSSION

### A.    Design Defect

"Under Texas law, '[t]o recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery.'" *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1040 (5th Cir. 2011) (quoting *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)). The district court found that although there was a material factual dispute as to the unreasonably dangerous prong, *Scott v. Dorel Juvenile Grp., Inc.*, 773 F. Supp. 2d 664, 671–72 (N.D. Tex. 2011), Delain could not prove

causation and therefore, granted summary judgment to Dorel on Delain's design defect claim, *id.* at 672.

## 1.    Unreasonably Dangerous

"Unreasonable dangerousness is a common law element evaluated using the following five factors:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; (5) the expectations of the ordinary consumer."

*Goodner*, 650 F.3d at 1040 (quoting *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999)). These five factors are considered "holistically; no single factor needs to be proven on its own, so long as all factors working together point to a finding of unreasonable dangerousness." *Goodner*, 650 F.3d at 1041 (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 432 (Tex. 1997)). "Generally, unreasonable dangerousness is a question of fact for the jury. It only becomes a matter of law if reasonable minds cannot differ." *Goodner*, 650 F.3d at 1040 (citing *Hernandez*, 2 S.W.3d at 260–61).

This five-factor evaluation is a risk-utility analysis. *Timpte Indus.*, 286 S.W.3d at 311. The Texas Supreme Court has cautioned that this "risk-utility analysis does not operate in a vacuum, but rather in the context of the product's intended use and its intended users." *Id.* at 312. Dorel invites this Court to consider that the latch itself is not unreasonably dangerous as it was not the latch that caused the harm to K.A. Dorel analogizes the latch as a puppy leash

to the Drano being a tiger. Such an analogy is inapposite, because the evidence shows that in its marketing of the latch, Dorel discusses using the latch to secure cabinets and drawers where one might store cleaners and medicine. That is to say, that the latch's utility is keeping children out of cabinets where there might be harmful things. Moreover, Delain's expert, John Scates, opined that a latch installed without the catch could be opened with as little as 2.75 pounds of force, much less than the 25 pounds that Dorel's specifications state that the latch should be able to withstand. Dorel's expert, Dirk Duffner, confirmed this result and found that 63% of the latches he tested failed with less than 25 pounds of force applied to them (median: 4.2 pounds; minimum: 1.6 pounds). In light of this evidence, we find that the evidence on the dangerousness of the latch does not cut so in Dorel's favor that reasonable minds could not find the product unreasonably dangerous. Therefore, Delain has sufficiently proved the unreasonably dangerous aspect at this summary judgment stage.

### 2.　Safer Alternative Design

A "safer alternative design" is defined by Texas law as

> a product design other than the one actually used that in reasonable probability:
> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac & Rem Code § 82.005(b). As the latch is currently manufactured, the latch arm is sloped. *See* Fig. 1. Scates, Delain's expert, opined that removing the slope in the latch arm could dramatically improve the susceptibility of the latch to being bypassed through downward force. This

No. 11-10349

Figure 1



change would reduce the chance of failure due to downward force by 89% and increase the adjustment range by 600%, which would reduce the chance that the latch could be defeated by outward force. Both of these changes "significantly reduce[] the risk of . . . injury" and are inexpensive and feasible with current technology. There is, therefore, sufficient evidence of a safer alternative design for Delain to survive summary judgment.

### 3. Causation

The final element of a design defect claim is causation. Texas law requires that the defect be a "producing cause of the personal injury." Tex. Civ. Prac. & Rem. Code § 82.005(a)(2). "Texas courts define producing cause as one that is 'a substantial factor in bringing about an injury, and without which the injury would not have occurred.'" *Goodner*, 650 F.3d at 1044 (quoting *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007)). Dorel argues that Delain cannot sufficiently prove causation for two reasons: (1) the testimony is speculative as to whether the cabinet door was shut (but-for cause) and (2) the testimony does not reveal whether K.A. could open the Drano can (proximate/substantial cause). As to the testimony regarding but-for causation, Bobbie testified in her deposition that it was her habit to keep the cabinet door in question closed, and Delain testified that it was her memory that the cabinet door was closed that

6

evening.  Causation can be proved by circumstantial evidence.  *Goodner*, 650 F.3d at 1044.  There is sufficient circumstantial evidence for a reasonable jury to be able to find but-for causation.  *See Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 335 F.3d 423, 427 (5th Cir. 2003).  On proximate cause, Dorel's argument about whether Delain can produce evidence of K.A.'s ability to open the Drano can confuses what is necessary for Delain to make out her design defect claim against Dorel.  Evidence relating to K.A.'s opening of the Drano can would be relevant in a products liability action against Drano's manufacturer, who has already settled, but is not necessary proof for Delain's claim against Dorel.  *Cf. Koonce v. Quaker Safety Prods. & Mfg. Co.*, 798 F.2d 700, 716 (5th Cir. 1986).  Delain has adduced sufficient evidence on both the but-for and proximate cause aspects of causation.

This proof, in addition to sufficient evidence as to the dangerousness and safer alternative design prongs, demonstrates that the district court erred in granting summary judgment to Dorel on Delain's design defect claim.

## B.    Negligence

The same proof that Delain has marshaled to support her design defect claim is also sufficient to allow her to survive summary judgment on her negligence claim. "A cause of action for negligence in Texas requires three elements.  There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).  As to duty, "[a] manufacturer has a duty to exercise reasonable care in designing and manufacturing a product." *Uniroyal Goodrich Tire Co. v. Martinez*, 928 S.W.2d 64, 68 (Tex. App.—San Antonio 1995, writ granted) (citing *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871–72 (Tex. 1978)), *judgment aff'd* 977 S.W.2d 64 (Tex. 1998).  The breach is evidenced by the existence of a safer design alternative.  *Cf. Am. Tobacco Co.*, 951 S.W.2d at 437.  Finally, the prima facie evidence that the latch

was a "producing cause" is sufficient to make out the causation requirement for a negligent design action. *See Uniroyal Goodrich Tire*, 928 S.W.2d at 68 ("To show that conduct caused an injury, the plaintiff must present evidence of cause in fact and foreseeability.").

Moreover, we find that there is sufficient evidence to make out Delain's gross negligence claim as well. Gross negligence under Texas law requires (1) an "extreme degree of risk," Tex. Civ. Prac & Rem. Code § 41.001(11)(a), and (2) a "conscious indifference to the rights, safety, or welfare of others." *GM v. Sanchez*, 997 S.W.2d 584, 595 (Tex. 1999). The extreme degree of risk is manifested in evidence that Dorel marketed the latches to "keep little ones out of hazardous cabinets and drawers" and as "durable locks that will help keep your children out of cabinets and drawers that may be dangerous to them." As to conscious indifference, the evidence shows that Dorel received numerous complaints about young children being able to defeat their latches, and yet, there were no investigations undertaken on the part of Dorel. This awareness of the problem establishes conscious indifference sufficiently for Delian's claim to survive summary judgment.

## C.    Warranty Claims

### 1.    Express Warranty

The district court was correct in finding that Delain cannot make out an express warranty claim against Dorel because it was Bobbie not Delain who bought the latches.

> Successful assertion of breach of an express warranty requires: 1) an affirmation or promise made by the seller to the buyer; 2) that such affirmation or promise was part of the basis for the bargain, e.g. that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5) that the failure to comply was the proximate cause of the financial injury to the buyer.

*Lindemann v. Eli Lilly & Co.*, 816 F.2d 199, 202 (citing *Gen. Supply & Equip. Co. v. Phillips*, 490 S.W.2d 913, 917 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.)); *see also* Tex. Bus. & Com. Code § 2.313. This requires that "an affirmation or promise" be made to the plaintiff in order for an express warranty claim to stand. *See Lujan v. Tampo Mfg. Co.*, 825 S.W.2d 505, 511 (Tex. App.—El Paso 1992, no writ).

### 2.    Implied Warranty

This contact between the seller and the plaintiff is not required, however, in breach of implied warranty cases. *See Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 465 (Tex. 1980). To recover damages for breach of an implied warranty of merchantability, a plaintiff must prove there was some defect in the product, that is to say, a condition of the goods that renders them unfit for the ordinary purpose for which they are used. *See Otis Spunkmeyer, Inc. v. Blakely*, 30 S.W.3d 678 (Tex. App.—Dallas 2000, no pet.); *see also* Tex. Bus. & Com. Code §§ 2.314–15. Delain's proof on the design defect also satisfies the requisite proof to make out a claim on breach of implied warranty.

### IV.  CONCLUSION

For the foregoing reasons, we agree with the district court that Dorel is entitled to summary judgment on the breach of express warranty claim but reverse the district court's judgment as to the design defect, negligence (including gross negligence), and breach of implied warranty claims.