NO. 07-06-0215-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

NOVEMBER 30, 2007

_____

ROBERT GISH and PINNACOL ASSURANCE,

Appellants

v.

TIMPTE INDUSTRIES, INC. and TIMPTE, INC.,

Appellees

_____

FROM THE 242nd DISTRICT COURT OF HALE COUNTY;

NO. B33499-0406-A; HON. ED SELF, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This is a case involving claims of products liability and summary judgment. Robert

Gish and Pinnacol Assurance (collectively referred to as Gish) appeal from a summary

judgment denying them relief against Timpte Industries, Inc. and Timpte, Inc. (collectively

referred to as Timpte). Gish contends the trial court erred in granting the judgment because 1) the "no evidence" portion of the motion did not encompass the marketing/design defect claims and 2) he offered more than a scintilla of evidence of three design defects. We affirm in part and reverse in part.

### Background

While attempting to load ammonium sulfate into the trailer portion or hopper of his tractor trailer, Gish fell from atop the hopper and injured his legs. The hopper had been designed, manufactured, and marketed by Timpte. Thereafter, Gish sued Timpte upon various claims sounding in products liability. Timpte moved for both a traditional and no evidence summary judgment contending, among other things, that the "uncontradicted summary judgment evidence shows the absence of any marketing or design defect, negligence or gross negligence on the part of Timpte" and "[t]here is no evidence of the product [or trailer] being defective or unreasonably dangerous, and there is no evidence the trailer was the proximate or producing cause of the . . . injuries" suffered. The trial court denied that part of the motion requesting a traditional summary judgment but granted that part founded upon no evidence. Gish appealed the ruling only as it related to the claims of marketing and design defects.

### Marketing Defect

As for the cause of action sounding in marketing defect or the failure to provide adequate warnings, Gish contends that it was not encompassed in Timpte's motion for a "no evidence" summary judgment. We disagree and overrule the point.

2

In paragraph "1," Timpte expressly asked the trial court to "render, pursuant to Rules 166a and 166(a)(i) of the Texas Rules of Civil Procedure, a take nothing judgment . . . on the grounds that there is no genuine issue as to any material fact that [it] is entitled to summary judgment . . . and there is no evidence supporting Plaintiff's claims against this Defendant." It then closed its motion by alleging that 1) the "uncontradicted . . . evidence shows the absence of any marketing or design defect . . ." and 2) "[t]here is no evidence of the product *being defective* or unreasonably dangerous, and there is no evidence the trailer was the proximate or producing cause of the Plaintiff's injuries." (Emphasis added). Moreover, in response to the motion, Gish cited to evidence purporting to show the existence and effect of the alleged marketing defect.

It is true that one may not legitimately proffer conclusory or general "no evidence" motions for summary judgment. *Cuyler v. Minns*, 60 S.W.3d 209, 212 (Tex.App.–Houston [14th Dist.] 2001, pet. denied). And though nothing prohibits combining traditional and "no evidence" motions into one document, the motions must give fair notice to the non-movant of the basis upon which summary judgment is sought. *Waldmiller v. Cont'l Express, Inc.*, 74 S.W.2d 116, 122-23 (Tex.App.–Texarkana 2002, no pet.). This includes the duty to specify the particular elements of the cause of action which supposedly lack evidentiary support when relief is sought under rule 166a(i). TEX. R. CIV. P. 166a(i) (requiring the motion to state the elements as to which there is no evidence).

In addressing the alleged marketing defect via its summary judgment motion, Timpte recited the elements of such a claim but did not specify which particular element purportedly lacked substance. That is, it did not expressly say something along the lines

3

of: "Regarding the marketing defect cause of action, there is no evidence of element X or Y." Nevertheless, the litigant did aver that:

> . . . Plaintiff understood at the time of the accident that getting on top of the truck involved some risks and could present a dangerous situation, and he could be seriously injured by getting on top of the truck. Thus, any additional instruction or warning, or the alleged lack thereof, clearly did not cause or contribute to cause this accident.

This allegation is indication that Timpte had in mind at least the element of causation. That this is true finds further support in the paragraph labeled "Conclusion." As mentioned above, the movant asserted that "[t]here is *no evidence of the product being defective or unreasonably dangerous*, and there is *no evidence the trailer was the proximate or producing cause* of the Plaintiff's injuries." (Emphasis added). This coupled with 1) Gish's attempt to illustrate why evidence existed supporting the claim in general and causation in particular as well as 2) the initial assertion that summary judgment was sought under both Rule 166a and 166a(i), we cannot but hold that the allegations were enough to provide reasonable notice of the elements under attack. *See Ketter v. ESC Medical Systems, Inc.*, 169 S.W.3d 791, 798-99 (Tex.App.–Dallas 2005, no pet.) (holding that the statement that the "claims for breach of the implied warranty of merchantability must fail because he will be unable to demonstrate that the device was 'unmerchantable'" was sufficient to allege a no-evidence motion).

Although Gish argues that a ground for summary judgment cannot be supplied in a prayer for relief, the case cited in support of that proposition involved only a prayer for general relief, not the reference to an element of a cause of action. Indeed, we recognize that the substance of a motion can generally be determined from the body of the motion

4

and the prayer for relief. *Doctor v. Pardue*, 186 S.W.3d 4, 16 (Tex.App.–Houston [1st Dist.] 2005, pet. denied). And, to ignore what is said in a prayer or conclusion simply because it is labeled "prayer" or "conclusion" would be nonsensical for often those paragraphs best describe, in a concise way, what is involved or sought.

### *Design Defect*

Gish next argues that he presented more than a scintilla of evidence with respect to the no evidence motion for summary judgment as it related to the cause of action sounding in design defect.[1] The evidence to which he alludes is contained in the deposition and affidavit of his expert Dr. Gary Nelson. We sustain the issue.

To prevail on a design defect claim, the plaintiff must show that there existed a safer alternative design and that the defect was a producing cause of personal injury, property damage, or death for which recovery is sought. TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a) (Vernon 2005). Furthermore, the defect must be unreasonably dangerous. *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999) (stating that §82.005 does not negate the common law requirement that a design defect renders the product unreasonably dangerous). And, whether a defect falls within that category depends upon a risk-utility analysis. *Id.* at 261. Under that analysis, we consider 1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use, 2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive, 3) the manufacturer's ability to

---

[1]Gish does not contend in this or any other issue that he presented some evidence establishing a material question of fact regarding the elements of his marketing cause of action. Thus, we do not address that topic.

eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its cost, 4) the user's anticipated awareness of the dangers inherent in the product and the ability of those using the product to avoid the danger because of the general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions, and 5) the expectations of the ordinary consumer. *Id.* at 256. Implicit within each indicia is the concept of intended use; that is, the designer's intended use of the product must be counterbalanced when each factor is considered. *See id.* at 256-60 (considering the use or misuse of the product in conjunction with the aforementioned factors). And, while the presence of evidence developing a particular factor may be dispositive, the determination of whether a product is unreasonably dangerous often involves factual disputes necessitating resolution by a factfinder. *Id.* at 260-61.

Here, the purported design defects encompassed 1) the presence of two top rungs in a ladder affixed to the hopper which rungs permitted someone to climb atop the trailer when they were not supposed to, and 2) the absence of an unobstructed, slip resistant, sufficiently wide walkway or "foothold" atop or around the trailer or hopper with an accompanying "handhold" or "grab bar." According to Gish's expert, curing these defects were both "economical" and "technically feasible." Indeed, grab bars were "commonly provided on tank trailers" and "such minor additions to the overall complex design of the trailer . . . would only constitute a very small fraction of the overall cost of the trailer." Removing the top two rungs of the ladder would also reduce the cost of the ladder, according to expert Nelson. To this we add the deposition testimony of Timpte's

6

representative wherein he stated that the company changes the trailer's design "every day based on customer requests"; so, it could be said that developing and implementing alterations were not things uncommon to or beyond the means of the company's manufacturing process or mode of business.

Nelson also opined that the defect in the ladder was dangerous because it invited one to climb onto the top of the trailer despite warnings against doing so. He further noted that the walkway to which the ladder led contained a "polished metal surface with tripping hazards" and described how those using the walkway had to stand in a manner that impeded balance or made it easier to fall, especially if the wind was to blow. Moreover, it was built without a "3-point contact" or "3-point attachment"; "guidelines in the design standards for access systems" allude to the use of a contact system, and its absence constituted a "design defect," continued Nelson. By adopting the improvements suggested (*i.e.* widening the walkway, adding a non-slick surface, or affixing a grab bar), one could utilize a "wider stance . . . to significantly combat the influence of the wind, and thus prevent, or significantly reduce[] the risk that persons would fall from the top of the trailer." The walkway need not have been of a complex design to achieve the desired goal, and its presence, he believed with a "high degree of certainty," would have prevented Gish from being blown from atop the trailer or at least "significantly lower[ed] the probability of [his] being blown over."

Other evidence illustrates that the company recognized climbing atop the trailer was hazardous. As Timpte's representative said: "we don't believe that any reasonable individual would ever consider climbing up there, but we do warn not to because it is a hazard and so we warn against that." Yet, the warning in question says nothing about

7

walking on the hopper's edge. Instead, it cautions against walking over the trailer's sides into the hopper's bed. And, while in Timpte's view less than reasonable people would go atop the trailer, these comments, nonetheless, are susceptible to interpretation by a factfinder to mean that Timpte was aware of not only the possibility that someone would go atop the trailer (why else warn) but also in doing so, the person would encounter a hazardous condition. *See Hernandez v. Tokai Corp.*, 2 S.W.3d at 258 (stating that a foreseeable misuse may still give rise to a design defect).

As for removing the top two rungs of the ladder, that would save the manufacturer the costs of the rungs, according to Nelson, and their removal would not impair the trailer's utility. Instead, it would purportedly make it more difficult to encounter the slippery surface as well as easier to heed the manufacturer's warning against climbing over and into the trailer. In other words, it would ameliorate the invitation to go where one was not supposed to go, or so the evidence would permit reasonable minds to debate.

That Gish may have known of the risk involved in traversing the hopper's edge is subject to debate since he had done it several times before the incident in question. Yet, he believed himself compelled to given the manner in which grain had to be loaded on those particular occasions. Apparently, the spout from which the grain poured could not be moved into loading position and neither a functioning catwalk nor harness was available to him to safely place the spout over the trailer. So, he had to climb atop the trailer's edge to physically move it into place.

When considered as a whole, the foregoing evidence, if believed, constitutes some evidence upon which reasonable factfinders could disagree as to whether the trailer's design was both unreasonably dangerous and a cause of Gish's fall. They not only touch

8

upon the indicias of use, utility, the existence of alternative designs, the economic impact of implementing the changes, the ability to implement modifications, the existence or absence of clear warnings, the obviousness of the risk involved, and the need to encounter it but also describe the nexus between encountering the defect and his injuries.

Consequently, Timpte was not entitled to summary judgment on the elements of unreasonable dangerousness and causation. And, that Gish would not have heeded any warning about the condition if an adequate one was given, according to Timpte, does not change the result for Gish did not so testify. Rather, he said that he reads warnings and undertakes the practical course necessitated by the circumstances while using due care. This too leaves reasonable minds to question whether providing any warnings would relieve Timpte from liability.

Accordingly, we reverse that part of the summary judgment denying Gish recovery upon his design defect claim and affirm summary judgment on the other claims he prosecuted. So too do we remand the cause for further proceedings.


Brian Quinn
Chief Justice


9