# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2015

Lyle W. Cayce
Clerk

No. 14-40387

ERICA BLYTHE, individually and as next friend and guardian of H.B., a minor; KODY BLYTHE, individually and as next friend and guardian of H.B., a minor,

      Plaintiffs - Appellants

v.

BUMBO INTERNATIONAL TRUST, formerly known as Jonibach Management Trust; TARGET CORPORATION,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:12-CV-36

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

In this product-liability diversity action, for which Texas law controls, at issue is whether the product had marketing and design defects. After being placed in a Bumbo seat (the Bumbo) on a table, Erica and Kody Blythe's eight-month-old infant was injured when she separated from the Bumbo and fell onto

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-40387

the floor.  The Blythes sued Bumbo International Trust, the designer and manufacturer of the Bumbo, and Target Corporation, the seller (collectively, Bumbo), claiming the Bumbo was defectively designed and contained inadequate warnings.  Summary judgment was awarded Bumbo on the marketing-defect claim; and, after the jury returned a verdict for Bumbo on the design-defect claim, judgment as a matter of law was denied for the Blythes.  At issue are those two rulings, as well as the exclusion of post-incident evidence concerning the design.  AFFIRMED.

I.

The Bumbo, which is circular with a diameter of approximately 15 inches and made from foam-like material, is a seat designed to allow three to 14-month-old infants to sit in an upright position when they are still too young to do so on their own.  The Bumbo features:  a high back support which leans slightly to the rear of the seat; high side-walls; tapered leg openings, which elevate slightly the infant's legs; and a concave bottom, which, according to a biomechanical engineer testifying regarding the relative safety of the Bumbo, is only "an inch or two off the floor" when an infant is in the seat.

The Bumbo at issue had two warnings printed on it, warning, *inter alia*, against using it on a raised or elevated surface.  The box in which the Bumbo was sold and an instruction leaflet inside the box contained similar warnings against not using the Bumbo on a raised or elevated surface.

The Blythes' infant was injured in 2010.  Prior to 2007, a warning on the back of the Bumbo stated:

WARNING
NEVER USE ON A RAISED SURFACE
NEVER USE AS A CAR SEAT OR BATH SEAT
DESIGNED FOR FLOOR LEVEL USE ONLY
NEVER LEAVE YOUR BABY UNATTENDED
AS THE SEAT IS NOT DESIGNED TO BE
TOTALLY RESTRICTIVE AND MAY NOT

No. 14-40387

PREVENT RELEASE OF YOUR BABY IN THE
EVENT OF VIGOROUS MOVEMENT

In 2007, prior to the Bumbo's being given to the Blythes, and after receiving reports of injuries resulting from infants separating from their Bumbos, the Consumer Product Safety Commission (CPSC) issued a press release regarding the Bumbo's safety and discussed with Bumbo the need to recall the product. The Bumbo was recalled in October 2007 to address the adequacy of the warnings. As part of that recall, Bumbo added a second warning on the front-left side of the Bumbo and revised the language of the box and leaflet warnings. The second on-seat warning reads: "WARNING - Prevent Falls: Never use on any elevated surface". Directly above "WARNING" was a triangle with a prominent exclamation point. After the Bumbo was given to the Blythes in 2009, it was recalled again in 2012 to implement a safety harness. (The Blythes contend the 2012 recall was mandated by CPSC; Bumbo, that it was voluntary.)

In November 2009, the Blythes received the purple Bumbo at issue as a baby-shower gift. It was purchased from a Target retail store after the 2007 recall. (Target returned its entire inventory of Bumbos in response to the 2007 recall. The Bumbo at issue was manufactured after that recall.)

After receiving the Bumbo, the Blythes admittedly threw away the box in which it was sold and received, as well as the leaflet inside that box, without reading the warnings on either the box or the leaflet. The Blythes also admit they never read the two warnings on the Bumbo. (They contend this was because they did not see the on-seat warnings.)

In September 2010, while she was preparing dinner, Erica Blythe placed her eight-month-old infant in the Bumbo on top of the kitchen table to feed her. According to her deposition testimony, while Erica Blythe was sitting at the

No. 14-40387

table next to her, the infant pushed back with her feet, arched her back, came out of the Bumbo, and fell onto the floor, resulting in a skull fracture.

In this action, the Blythes claimed: the Bumbo was designed defectively; and the warnings were inadequate to warn against infants being able to fall out of the Bumbo. Bumbo moved for summary judgment.

Summary judgment was awarded Bumbo for the marketing-defect claim, but denied for the design-defect claim. In opposition to the former, the Blythes presented a report by their expert stating that consumers may fail to heed the Bumbo's on-seat warnings because of their "relative small size . . . , fadeability, location, and the lack of contrast between the lettering and the product". The court excluded the report as an attempt to have an "expert[] . . . invade the role of the judge in making legal determinations". *Blythe v. Bumbo Int'l Trust*, No. 6:12-CV-36, 2013 WL 6190284, at *3 (S.D. Tex. 26 Nov. 2013) (*Blythe I*). The court concluded the warnings were adequate as a matter of law; and, even if they were not, by failing to read the warnings, the Blythes failed to show the requisite causal link between any assumed inadequate warnings and the resulting injury. *Id.* at *3–5.

Prior to trial on the design-defect claim, Bumbo moved *in limine* to exclude any evidence related to the 2012 recall. In opposing the motion, the Blythes presented reasons why such evidence was admissible. At the pretrial conference, the court granted Bumbo's motion as it pertained to "anything related to the CPSC's investigation of the 2012 recall", ruling the evidence inadmissible, under Federal Rule of Evidence 407, as a subsequent remedial measure.

At the close of the evidence, Bumbo and the Blythes moved for judgment as a matter of law (JML) on the design-defect claim. The motions were denied. After the jury returned a verdict for Bumbo and judgment was entered, the Blythes again moved for JML and moved for a new trial. (The Blythes claimed

4

No. 14-40387

they were entitled to a new trial based on the court's exclusion of the 2012-recall-related evidence.)  Both motions were denied.  Regarding JML, the court ruled:  "Reasonable jurors could have concluded that the Bumbo seat, *when used as it was intended*, was not defectively designed.  In fact, there was scant evidence supporting the opposite view that the [Bumbo] was dangerous when used as designed."  *Blythe v. Bumbo Int'l Trust*, No. 6:12-CV-36, slip op. at 8 (S.D. Tex. 26 Mar. 2014) (emphasis added) (*Blythe II*).

## II.

The Blythes challenge the court's:  granting summary judgment for Bumbo against their marketing-defect claim; excluding evidence regarding the 2012 recall concerning the safety of using the Bumbo without a safety harness; and denying their second JML motion on their design-defect claim.  Among other assertions, Bumbo maintains many of the points raised by the Blythes are waived.  It is necessary to address only one of those waiver claims.

## A.

For the marketing-defect claim, the district court granted summary judgment on two bases:  there was no genuine dispute of material fact regarding the adequacy of the *on-seat* warnings, and they were adequate as a matter of law; and, in the alternative, by failing to read the warnings on the Bumbo, the box, or the leaflet inside the box, the Blythes could not establish causation.

The Blythes do not dispute the adequacy of the warnings as written.  Instead, they claim a genuine dispute of material fact exists regarding the condition, size, placement, and durability of the warnings on the Bumbo.  In that regard, they contend the court erred in refusing to consider their expert's report.  Further, they contend the court misapplied the summary-judgment standard by drawing factual inferences in favor of Bumbo as evidenced by the court's including in its opinion Bumbo's submitted photographs of an exemplar

No. 14-40387

Bumbo (red warnings on a yellow Bumbo), as opposed to their post-incident photos of the Bumbo given to them (faded red warnings on a purple Bumbo).

Addressing the court's alternative reason for granting summary judgment (failure to prove causation), the Blythes claim Texas law requires undisputed evidence showing they "ignored" the warnings. They contend their admittedly discarding the box and leaflet without reading the warnings, and their failure to "see" them on the Bumbo, do not amount to ignoring them. Additionally, they contend: the law requires Bumbo show that heeding the warnings would have prevented injury; and there is a genuine dispute of material fact on that point.

Bumbo maintains some of the Blythes' contentions were waived by their not being raised in district court in opposition to summary judgment. Because summary judgment was proper, we need not reach this waiver claim.

"We review a grant of summary judgment *de novo*, applying the same standard as the district court and viewing the evidence in the light most favorable to the non-moving party." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 895 (5th Cir. 2013) (citation omitted). In addition to the Blythes' admitting, as discussed *supra*, that they never read the warnings on the box, leaflet, and the Bumbo, Erica Blythe admitted in her deposition that she did not know the condition of the two warnings on the Bumbo either at the time she received it as a gift or at the time of the incident. Essentially for the reasons provided by the district court in its comprehensive and well-reasoned opinion granting summary judgment to Bumbo, including its ruling on causation, *see Blythe I* at *3–5, summary judgment was proper against the marketing-defect claim.

## B.

For the design-defect claim, the Blythes challenge the court's granting, before trial, Bumbo's motion *in limine* for the 2012-recall-related evidence, claiming the court erroneously excluded: information on Bumbo's website in

6

No. 14-40387

October 2012; pre-2012-recall communications between Bumbo and CPSC in 2011 and 2012; and other evidence relating to that recall. They contend this information is admissible, *inter alia*, to impeach: Bumbo's claim that the Bumbo was reasonably safe as initially designed (without a safety harness); and Bumbo's claim (according to the Blythes) that implementing the safety harness was *not* feasible.

Bumbo counters that the statements on its website are inadmissible because they do not directly contradict Bumbo's testimony. Additionally, Bumbo contends the post-incident communications between Bumbo and CPSC are inadmissible as a subsequent remedial measure because the recall was voluntary on the part of Bumbo and those communications discuss possible implementation of the safety harness, not prior incidents. Further, Bumbo claims the communications do not fall within Rule 407's "feasibility" exception for impeachment purposes because the feasibility of installing the safety harness was *not* contested. Last, while admitting a safety harness makes the Bumbo safer, Bumbo maintains it was not unreasonably dangerous without it. Thus, according to Bumbo, because any subsequent remedial measures are inconsequential to determining whether the Bumbo was unreasonably dangerous when it was manufactured and sold, the Blythes cannot show substantial prejudice.

1.

Bumbo claims: by contesting only the district court's reliance on Rule 407, the Blythes waived their challenge to the court's excluding the 2012-recall-related evidence, based also (according to Bumbo) on Rules 402 (relevant evidence is admissible) and 403 (*inter alia*, unfairly prejudicial evidence is inadmissible); and, as a result, the exclusion of the evidence under Rules 402 and 403 is not contested. The court, however, did not base its exclusion ruling on Rules 402 or 403. In granting Bumbo's motion *in limine* at the pretrial

conference, the court stated it was excluding the evidence based on Rule 407, as a "subsequent remedial measure". Later, denying the Blythes' post-trial motions, the court revisited this issue and relied on Rule 407, stating in a footnote: "For similar reasons, Rule 403 also supports exclusion". *Blythe II* at 4 n.2.

In short, the court based exclusion primarily, if not entirely, on Rule 407. The court never mentioned Rules 402 or 403 at the pretrial conference, and only referenced Rule 403 in its post-trial order to explain that Rule 407 prevents the unfair prejudice proscribed by Rule 403. Therefore, the Blythes have not waived their challenge to the exclusion of the 2012-recall-related evidence.

2.

"A district court's decision to exclude evidence is reviewed for an abuse of discretion; however, even if an abuse of discretion is found, this court looks to whether the error affected a substantial right, i.e., was harmless." *Smith v. Jaramillo*, 394 F. App'x 183, 186 (5th Cir. 2010); *see also* Fed. R. Evid. 103(a).

As discussed, in granting Bumbo's motion *in limine* at the pretrial conference, the court excluded, under Rule 407, evidence related to the 2012 recall because it "was a subsequent remedial measure". In general, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove[, *inter alia*:] a defect in a product or its design; or a need for a warning or instruction". Fed. R. Evid. 407. On the other hand, "the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving . . . the feasibility of precautionary measures". *Id.* "[W]hen the decision to admit or exclude evidence of a design change is a close call, a district court's decision to exclude the evidence is within its discretion". *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 367 (5th Cir. 2008).

No. 14-40387

a.

The Blythes claim statements taken from Bumbo's website in October 2012 should have been admitted to impeach trial testimony by Bumbo's corporate representative. On cross-examination, that representative responded in the affirmative when asked: "[I]s it your testimony that the Bumbo Baby Seat is safe to be used without a seat belt?" As a result, and seeking to have the court set aside the pretrial exclusion ruling in favor of Bumbo, the Blythes then sought to introduce evidence from Bumbo's website, describing the proper way to use the newly modified Bumbo, which post-2012 included a safety harness:

> Is my baby safe if I continue to use my Bumbo Baby Seat without a restraint belt?
>
> Do not use your Bumbo Baby Seat until the restraint belt and new warning sticker have been properly added to your seat. Be sure to read the new warning sticker before using the seat.
>
> I've never had a problem with my child getting out of the Bumbo Baby Seat. Should I still use the restraint belt?
>
> Yes, please use the restraint belt. It is important to follow all of the product instructions and have a clear understanding of the new warning sticker provided with the Repair Kit. Children may move unexpectedly and using the belt will help prevent children from getting out of or falling from the seat *when used on the floor*, or causing the Bumbo Baby Seat to slide or move.

(Emphasis added.) The court did not alter its exclusion ruling.

The Blythes claim the website instructions impeach Bumbo's corporate representative's testimony that it is safe to use the Bumbo without a safety harness. Regarding the impeachment exception to Rule 407, our court has cautioned against its liberal application, stating district courts "should guard against the improper admission of evidence to prove prior negligence under the guise of impeachment". *Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1011 (5th Cir. 1989); *see also id.* ("This exception must be applied with care, since any evidence of subsequent remedial measures might be thought to contradict and so in a sense

9

impeach a party's testimony that he was using due care at the time of the accident . . . . If this counted as 'impeachment' the exception would swallow the rule." (alterations and internal quotation marks omitted) (quoting *Pub. Serv. Co. of Ind. v. Bath Iron Works Corp.*, 773 F.2d 783, 792 (7th Cir. 1985)).

The district court did not abuse its discretion in excluding the instructions on Bumbo's website. This is the exact situation cautioned against in *Hardy*; the Blythes attempt to introduce the website instructions for the purpose of proving a design defect "under the guise" of claiming they are admissible under the impeachment exception.

Further, the website instructions do not directly impeach Bumbo's representative's testimony. The testimony and the excluded evidence are reconcilable. The statements on the website never state that use of the Bumbo on a *non-elevated surface* without the safety harness renders the product unsafe; rather, the website statements only instruct users not to use it without the safety harness.

Finally, to the extent the Blythes' claims have merit, they are at best a close call, necessitating our ruling the court did not abuse its discretion in excluding the evidence. *See, e.g.*, *Baker*, 536 F.3d at 367.

b.

The Blythes also seek to admit communications between Bumbo and CPSC in 2011 and 2012, and other 2012-recall-related evidence. They assert such evidence should be admissible for various reasons. First, relying on *Brazos River Authority v. GE Ionics, Inc.*, they claim Rule 407 only prohibits evidence of the subsequent measures themselves, and not evidence of the party's analysis of its product. *See* 469 F.3d 416, 428–31 (5th Cir. 2006). Next, and without citing authority supporting their position, the Blythes contend the 2012 recall was mandatory and that Rule 407 does not apply to mandatory-recall campaigns. Last, they claim this evidence is admissible under the feasibility exception to Rule 407. *See* Fed. R. Evid. 407.

10

No. 14-40387

i.

In *Brazos River Authority*, our court examined the circumstances under which "evidence of post-accident *investigations* is admissible". 469 F.3d at 430 (emphasis added). Analyzing each exhibit individually, our court concluded they were improperly excluded for different reasons, holding: the first exhibit in question was improperly excluded because any references to subsequent remedial measures had been redacted; the second, because it only discussed general "improvements" with the product's performance, not safety; and the third, because, *inter alia*, it discussed product "failures" unrelated to the accidents in question. *Id.* at 430–32.

The Blythes maintain *Brazos River Authority* stands for the proposition that any "investigative analysis or pre-remedial measure communications" do not fall under Rule 407. This assertion mischaracterizes our precedent. *Brazos River Authority* focuses on the subject matter, underlying purpose, and relevance of communications under review to determine whether they constitute subsequent remedial measures. *See id.* Here, incident reports, such as for incidents similar to the Blythes' infant, prompted CPSC's investigation and communications with Bumbo, leading to the 2012 recall. Further, the communications at issue discussed the need for, and details of, implementing a safety harness in an effort to make the Bumbo safer only in relation to the type of incident in question, not the Bumbo generally. Moreover, the 2012-recall-related evidence is not relevant to determining whether, for the incident at issue, the Bumbo is defectively designed because it only addresses the implementation of a safety harness. Bumbo has never claimed it is safe to use a Bumbo on an elevated surface, as it was used in this instance—just the opposite. As a result, because the Bumbo was being used contrary to its warnings by being placed *on an elevated surface*, the 2012-recall-related evidence does not fall within one of the exceptions in Rule 407. The court did not abuse its discretion in determining the communications constituted subsequent remedial measures.

No. 14-40387

ii.

Regarding the Blythes' contention that mandatory recalls fall outside Rule 407, they cite no authority supporting this position. Assuming *arguendo* mandatory recalls do not fall under Rule 407, CPSC's official announcement and trial testimony by Bumbo's corporate representative demonstrate the recall was voluntary.

iii.

Last, the Blythes contend the evidence is admissible to prove the feasibility of installing a safety harness on the Bumbo. Although evidence of a post-incident-design change can be admissible to rebut testimony claiming the change is *not* feasible, this exception applies only if feasibility is contested. *Grenada Steel Indus., Inc. v. Ala. Oxygen Co., Inc.*, 695 F.2d 883, 888 (5th Cir. 1983). Prior to trial, Bumbo conceded the feasibility of the alternative design. Consequently, feasibility *vel non* is not at issue.

C.

Finally, the Blythes contend the court erred in denying their post-trial JML motion on their design-defect claim. In their opening brief here, they maintain they have proven the three elements required (according to the Blythes) for that claim: an alternative design was economically and technologically feasible; that design would have prevented the injury without substantially impairing the utility of the product; and the defect caused the injuries.

"We review a district court's denial of a motion for judgment as a matter of law *de novo*." *Poyner v. Mitsubishi Power Sys. Ams., Inc.*, 482 F. App'x 887, 888 (5th Cir. 2012). A court may "resolve the issue against the [movant]" when, *inter alia*, "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [movant] on that issue". Fed. R. Civ. P. 50(a)(1).

To prove a design-defect claim under Tex. Civ. Prac. & Rem. Code § 82.005(a), the plaintiff must show: "(1) there was a safer alternative design; and

12

No. 14-40387

(2) the defect was a producing cause of the personal injury . . . for which the claimant seeks recovery". The statute defines "safer alternative design" as

> a product design other than the one actually used that in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code § 82.005(b).

The Blythes' claim is arguably waived (Bumbo contends it is waived) because, in their opening brief, the Blythes did not address the following additional required element for a design-defect claim. On a certified question from our court, the Texas Supreme Court explained in 1999 that the above-discussed statutory elements, although necessary, are not sufficient to prove, as a matter of law, a design defect. *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999). Rather, the plaintiff "must not only meet the proof requirements of the statute but must [also] show, under the common law, that the product was defectively designed so as to be *unreasonably dangerous*, taking into consideration the utility of the product and the risk involved in its use". *Id.* at 257 (emphasis added).

Regarding unreasonable dangerousness, in denying the Blythes' JML motion during trial, the court stated: "accidents can happen with any product"; and "a jury could certainly say [the Bumbo at issue is] unreasonably dangerous, but I'm not sure how you can say as a matter of law it's unreasonably [dangerous]". *See also Blythe II* at 7–9 (noting its initial ruling on this issue at trial). In their reply brief, the Blythes assert in very summary fashion that the Bumbo is unreasonably dangerous. But, as noted by the district court in denying the Blythes' JML motion during trial, reasonable jurors, on this record, could disagree on whether the Bumbo had that characteristic. Accordingly, the Blythes' post-trial JML motion was properly denied.

No. 14-40387

III.

For the foregoing reasons, the judgment is AFFIRMED.